in the case of StarNet Insurance against Ruprecht. Mr. Houlihan. Good morning. May it please the court. My name is Sean Houlihan. I represent the appellants Adam Ruprecht and Daniel O'Reilly as independent administrator of the estate of Patrick O'Reilly as assignees of Deerfield Construction and Westfield Insurance Company. As your justices know, this case involves an issue of whether a subcontractor's coverage under its employer's liability insurance policy with StarNet Insurance applied to satisfy a stipulated judgment entering into a personal injury trial where the employer's coverage was covering the insurance subcontractor. The district court ruled that insurance subcontractor. Justices, I think I'm getting playback of what I just said on like a five-second delay or something. I believe Mr. Galeano, do you have the YouTube stream on? If you do have that stream on, you need to turn it off or stay muted because we were getting some questions. Is that better? Mr. Houlihan, why don't you proceed and see how we go? Thank you, Justice. I think it's important. Counsel, we are judges, not justices. Sorry, Judge. I think it's important to clarify the position of the parties as they existed at the Cook County trial at the time Deerfield Construction entered into its settlement and assignment. Daniel O'Reilly as administrator of the estate of Patrick O'Reilly and Adam Ruprich had claims against Deerfield Construction, the general contractor to a construction project that was brought in a lawsuit. P.S. Demolition was the demolition subcontractor. Mr. Houlihan, I'm going to go straight to this, please. So Mr. O'Reilly's estate and Mr. Ruprich are standing in Deerfield's shoes by virtue of the assignment of Deerfield's claim for contribution. Okay. But as I understand it, the Kotechi cap would apply to the contribution claim but for the waiver of the Kotechi cap in P.S. Demolition's contractual agreement to indemnify and hold harmless Deerfield. Do you agree that this contractual waiver triggers the exclusion in the star net policy? I believe that the exclusion of liability assumed under a contract is triggered by the indemnification and Kotechi waiver by P.S. Demolition in its contract with Deerfield, yes. But then I think it's our position that the exclusion is trumped by the exception. And I'll get back to the positions of the parties. I think this is very important. When Deerfield settled its case against the estate of O'Reilly and Ruprich, it assigned its third-party contribution action against P.S. Demolition to them. After the assignment, the estate of O'Reilly still had a pending wrongful death and survival claim against P.S. Demolition in addition to the assignment that was afforded the estate with Mr. Ruprich. As the plaintiff said, P.S. Demolition could be liable to Deerfield under its contribution claim if they were liable in tort to either O'Reilly or Ruprich. The plaintiff's position was since there was no pending actions but for the assignment, there was no direct action pending when the case entered into a stipulated judgment with P.S. That's not true. The estate of O'Reilly still had an active wrongful death and survival claim against P.S. Demolition and the assignment. So when the case entered into a stipulated judgment with O'Reilly, Ruprich, and P.S. Demolition, all the claims are taken care of at that time. So the contribution action actually is a viable action and I think trumps the exclusion as set forth by the Catechi waiver of P.S. Demolition and enforced by Starnet. To the extent that you rely on the exception to the exclusion for the warranty to do one's work in a workmanlike manner, that's a contractual claim, is it not? And one that Deerfield has reserved to itself. Well, it usually is. The case law that we've talked about in the briefs, it usually is a contractual arrangement, but it can be brought under a tort claim if the damages, certain damages are asked. And that's why in the Sierra case, Sierra referencing the Mormon doctrine, those cases say that if you are bringing a case for solely economic damages, and in those cases, in fact, even in the Western casualty case that the district court cited as supporting that case law, those were cases involving a loss of value or property damage. There was no personal injury or death involved. So it's a solely economic damage, it has to be a contract, a breach of contract, where you have damages such as we have in this case, personal injuries of Rupert and the death of Patrick O'Reilly. Those damages can be brought as a tort claim, specifically as a tort contribution claim. And the contribution claim, as I've already stated, was a viable one based on the direct claim that the estate of O'Reilly had at the time that P.S. Demolition entered into its stipulation in the lower court in Cook County. But although the underlying personal injury suit was one in tort, not contract, P.S. Demolition's liability in that suit, whether it's to O'Reilly's estate in Rupert or to Deerfield, was limited by the terms of the Workers' Compensation Act and the Kentucky CAP. Not necessarily. How is anything above the Kentucky CAP recoverable? Well, it's recoverable because of that exception. The exception is very clear. That it does not apply. The exception is that we do not, we will not pay for liability assumed by contract, including agreements that limit the cap under workers' compensation, or in this case, the Kentucky CAP. But I see why I'm a bit mixed up is because the policy expressly excludes such assumed liability. The exclusion did specifically limit the payment. I agree with you, but the exception makes that exclusion not viable in our case because there is a warranty of workmanship that was in the contract between P.S. Demolition and Deerfield that was violated. And that warranty of workmanship can be brought as a tort if you have certain damages as personal injury or death as we had in this case. And the underlying contribution action that Deerfield filed against P.S. Demolition, they alleged that P.S. Demolition was negligent in its duty in a variety of OSHA violations. But the exception, well, I think as I read the exception, it's limited to a breach of warranty claim. And that warranty was one that P.S. Demolition owed Deerfield, not O'Reilly and Ruprecht. There doesn't seem to be any dispute that although Deerfield was pursuing a breach of warranty claim against P.S. Demolition, it didn't assign that claim to O'Reilly's estate and Ruprecht, but rather reserved that claim for itself. Well, the claims that were severed, it was a breach of contract claim that involved a failure to procure additional coverage. And there was also a breach of contract as to not putting Deerfield on as an a contribution claim that is viable because we had an active direct claim against P.S. Demolition through the O'Reilly estate, which is mentioned in the Starnet brief that P.S. Demolition could be liable to Deerfield if there was liability from P.S. Demolition to one of the two plaintiffs. They said it wasn't because the only claim was the contribution. And that's not true. The O'Reilly estate still had their wrongful death and survival claim pending at the time we settled the suit with P.S. Demolition. So there was a direct claim, which means that that claim of P.S. Demolitions to Deerfield, the contribution claim, the plaintiff stepped into the shoes of Deerfield and at the time Deerfield and P.S. Demolition had a viable claim and P.S. Demolition could be held liable to Deerfield for its prorated share of contribution. I think the district court in citing the Western Casualty case and the cases that Western Casualty cited specifically, the Western Casualty case involves three exclusions, one of which was identical to ours, which the exception held. The Western Casualty case did not pay the coverage because of the other two exclusions, N and O. But the A exclusion, which was identical to ours, except it didn't have the Kotacki language, but it was liability assumed by a contract, that was trumped by the exception. I think the Qualls case as well, that was a purely economic loss that was cited within the Western Casualty case. It was a purely economic loss where exclusions were used. And because it was an economic loss, the exclusion held. The exception couldn't trump the exclusion. But we have different damages that work outside the Mormon doctrine and the economic loss doctrine. At this time, I'd like to reserve the final one minute and 45 seconds for rebuttal. Certainly, counsel. Thank you. Mr. Gallinari. May it please the court. Can the court hear me? I see the yellow box outline, so I believe that's the case. Thank you very much. There are two arguments that were brought out in appellant's reply brief that I would like to address before the court that really were not developed by the plaintiffs before Judge Connelly or in their initial brief. And the first is this notion of direct claim that the estate of O'Reilly had against P.S. Demolition. In their brief, they say that the plaintiffs had filed claims for construction negligence. That's at the bottom of page three of the initial brief of the appellant's. And in support of the claim by the estate of O'Reilly against P.S. Demolition, the estate of O'Reilly alleged that O'Reilly was not an employee of P.S. Demolition. And P.S. Demolition filed a motion to dismiss saying, oh, yes, he was, and asserting its rights under workers' compensation law for the exclusive remedy provision. And Starnett then went into the circuit court as part of the declaratory judgment actions that were filed and obtained a final order from Judge Demacopoulos, that's exhibit four to our amended complaint, where Judge Demacopoulos states, this court also takes judicial notice of an order entered June 7, denying the motion to dismiss, which asserted that Patrick O'Reilly was P.S. Demolition's employee and the estate's claims were barred by the exclusive remedy provision of Illinois Workers' Compensation Act. Starnett has no duty to defend the claim brought by the estate of O'Reilly based upon the allegation that O'Reilly was not a P.S. Demolition employee. That claim may have still been in his pleading at the time of the stipulation, but when the parties entered into the stipulation here, they agreed that O'Reilly was, in fact, an employee of P.S. Demolition. So to the extent that plaintiff now in his reply brief wants to try to resuscitate this spurious direct claim that estate of O'Reilly has against P.S. Demolition, it's not going to give rise to coverage under the policy here for two reasons. One, such a claim must be predicated on a finding that O'Reilly was not a P.S. Demolition employee, so contradicts the stipulation that they've entered into with us. Second, the Circuit Court of Cook County in the earlier declaratory judgment action already ruled that a claim based upon the supposition that he was not an employee isn't a covered claim. So if he's covered, it's not stipulated under the stipulation, and we're asserting our exclusive remedy provisions under the Illinois Workers' Compensation Act. And if he is not an employee, it's still not a covered claim. Either way, it's not a covered claim. So I think that should dispose of this, because that finding of no coverage with respect to that direct claim that he is now talking about in his reply brief and in oral argument that he never raised before Judge Connelly, even if it's before this as a matter of proper appellate procedure, it's not sound, because it's contrary to the record, this order by Judge Democopolis is res judicata as to whether such a claim would be covered and could be within Starnett's policy here. The second thing that was brought out in the reply brief that I'd like to address is plaintiffs' continued attempt to use, I think misuse, the economic loss rule in support of its arguments. Mr. Houlihan said you can bring a claim for warranty brought as a tort if you're seeking personal injury damages. That really muddles Illinois law regarding warranties and what you can do and the economic loss rule. The economic loss rule doesn't apply here, because these plaintiffs aren't seeking economic damages. They're seeking personal injuries. So we're not talking about the economic loss rule and an exception to the economic loss rule. We're talking about the economic loss rule has no possible application here. And we see that in Mormon. I mean, he refers to Mormon, but go to Mormon itself. And we see the court at page 86, 91 ill second 86. Qualitative defects are best handled by contract rather than tort. Law applies whether the tort law theory involved is strict liability or negligence. Mormon, of course, as we know, is a strict liability case, not even a warranty case. Tort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence of the nature described above. The remedy for economic loss, loss relating to a purchaser's disappointed expectations due to deterioration, internal breakdown, or non-accidental clause, on the other hand, lies in contract. So yes, if there was no exclusive remedy provision under the Illinois Workers' Compensation Act, if O'Reilly was not an employee of P.S. Demolition the same way he was not an employee of Deerfield, O'Reilly would have a claim for construction negligence, the claim that they did not. The bottom line, forgive me, bottom line, your position, I take it, is that to the extent the underlying personal injury action involved any showing that P.S. Demolition was not conducting its demolition operations in a workmanlike manner, that is not the sort of warranty claim to which the exception refers. Correct. Is that your argument in a nutshell? Yes, yes, Your Honor. And we can just go to the policy itself. This insurance does not cover liability assumed under a contract and that it adds in this endorsement specific language that refers to Kotecha cap waivers. And then it says this exclusion does not apply to a warranty that your work will be done in a workmanlike manner. It's important to look at the language in the policy that that last sentence doesn't say this exclusion does not apply to any case where you, the insured, make a warranty to another contractor that your work will be done in a workmanlike manner. It refers back to the previous sentence. This exclusion does not apply to a warranty. This exclusion does not apply to a warranty means we must be talking about whether the liability assumed under a contract is a warranty that your work will be done in a workmanlike manner. And that's not the case here. The liability assumed under a contract that we argue triggers the exclusion, and he's already agreed that the exclusion applies, is the Kotecha cap waiver, not the warranty of good workmanship. And the warranty of good workmanship isn't even made to the plaintiffs. It's made to Deerfield. So I think that's another key factor as well. So we have a case where, yes, contribution liability must be predicated on liability in tort that PS demolition may owe to the plaintiffs. It can't be predicated upon liability in contract that PS demolition owes to the plaintiffs. So even if this court were to do something that Bloomfield Club says, where the Illinois Supreme Court says the warranty of good workmanship is construed into all contracts between construction contractors, and go beyond that and say, in addition to that, there is an implied warranty that an employer makes to people like O'Reilly and Ruprecht, you still don't have any relation between any such warranty and the contribution claim, because the contribution claim exists where the person seeking contribution and the person against whom contribution is being sought, both owe a pre-existing duty in torts to the claimant. That's why the contribution claim exists. And so to the extent that the plaintiffs here have taken an assignment of a contribution claim, I would say, yeah, they have a valid contribution claim predicated upon the duty that an employer owes in negligence to the plaintiffs. That doesn't give rise to a covered claim here because of the exclusion. And it doesn't give rise to a direct claim that they would have against PS demolition, because PS demolition in the underlying action asserted its exclusive remedy rights under the Illinois Workers' Compensation Act, to the extent of any claim made by employee against employer, to the extent that there is a claim by plaintiffs in their own right against PS demolition that is based upon them not being PS demolitions employee, that claim would be precluded by the stipulation that they entered into where they've admitted that they were PS demolitions employees. So no matter how you cut it, you don't have coverage under this policy. And that's why the district court was correct in granting our motion for judgment on the pleadings. Does the does the panel have any further questions for me? Hearing none, you have my thanks, Mr. Gallinari. Mr. Houlihan, anything further? Yes, please. Regarding the direct claim of Patrick O'Reilly, in the chancery matter that council referenced, Patrick O'Reilly, we had evidence that we're going to present at trial in this matter, that he was actually paid by another company called RDX Solutions, which was owned and run by the brother of PS demolitions owner. And it was always our contention that he was an employee of RDX and he kind of moved around so he was a non-union employee when they needed him at PS demolition. We entered into the stipulation at trial, and at trial there was a pending wrongful death survival against PS demolition, but we and O'Reilly were employees because we needed to access the employer's coverage, the employer's liability coverage. They have to be employees, they have to be hurt while working, and then they would submit us to the exclusion. It was our duty to show that the exception trumped the exclusion, which I think the evidence has shown. Regarding the economic loss rule, obviously we don't think it applies directly to our facts because we have facts that would get us outside of the economic loss rule because we have injuries and or death. But the cases that plaintiffs cite, it's pretty straightforward. They say these claims can't be brought as tort claims because they are solely economic damages. You need to have injuries or death to have tort claims, which we have through the warranty and through the contribution action, and we should be able to proceed on those and we should have coverage. I think this report erred in denying coverage to us, and I thank you all for your consideration. Thank you, Mr. Houlihan.